AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court

### for the
### Western District of New York

FILED
SEP 0 5 2018
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

**United States of America**

v.

Case No. 18-MJ- 6 41

**DAKOTA J. SARFATY, MARCOS D. GUZMAN a/k/a Kaos,
and LUIS D. MARCANO-AGOSTO a/k/a Blue**

#### CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Between on or about August 12, 2018, and August 17, 2018, in the Western District of New York, **DAKOTA J. SARFATY, MARCOS D. GUZMAN a/k/a Kaos, and LUIS D. MARCANO-AGOSTO a/k/a Blue**, did knowingly possessed, received, concealed and stored stolen firearms, which had been shipped and transported in interstate commerce, knowing and having reasonable cause to believe the firearms were stolen, in violation of Title 18, United States Code, Sections 2 and 922(j).

On or about August 12, 2018, in the Western District of New York, **DAKOTA J. SARFATY** did unlawfully steal, and take or carry away from the premises of a person who is licensed to engage in the business of importing, manufacturing, or dealing in firearms, firearms in the licensee's business inventory that were shipped or transported in interstate or foreign commerce, in violation of Title 18, United States Code, Sections 2, 922(u) and 924(m).

On or about August 16, 2018, in the Western District of New York, **DAKOTA J. SARFATY** did unlawfully steal, and take or carry away from the premises of a person who is licensed to engage in the business of importing, manufacturing, or dealing in firearms, firearms in the licensee's business inventory that were shipped or transported in interstate or foreign commerce, in violation of Title 18, United States Code, Sections 2, 922(u) and 924(m).

Between on or about August 12, 2018, and August 17, 2018, in the Western District of New York, **MARCOS D. GUZMAN a/k/a Kaos**, having been convicted on or about May 25, 2016, in County Court, Steuben County, of a crime punishable by imprisonment for a term exceeding one year, unlawfully did knowingly possess, in and affecting commerce, firearms, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

Between on or about August 12, 2018, and on or about August 17, 2018, in the Western District of New York, **DAKOTA J. SARFATY** did knowingly use a firearm during and in relation to a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A).

This Criminal Complaint is based on these facts:

☒   Continued on the attached sheet.

_____
*Complainant's signature*

JAMES E. BURROUGHS
Supervisory Special Agent
Bureau of Alcohol, Tobacco, Firearms & Explosives
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   September 5 , 2018

_____
*Judge's signature*

HONORABLE JONATHAN W. FELDMAN
United States Magistrate Judge, WDNY
*Printed name and title*

City and State:   Rochester, New York

2

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

State of New York  )
County of Monroe   ) SS:
City of Rochester  )

I, JAMES E. BURROUGHS, affirm to the following facts:

### AFFIANT'S BACKGROUND

1.      I am a Supervisory Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF), and assigned to the Rochester, New York Field Office. I am a graduate of the Criminal Investigator School and the ATF National Academy, both located at the Federal Law Enforcement Training Center in Glynco, Georgia. I have been employed as an ATF Special Agent since 2009. As part of my professional experience, I have participated in state and federal investigations involving the illegal possession and trafficking of firearms and narcotics. Previously, I was employed by the United States Department of Homeland Security as a Federal Air Marshal for eight years and a sworn law enforcement officer in the State of Florida for ten years. I earned a Bachelor of Science Degree in Human Services from Thomas Edison State University in 2008 and a Master of Business Administration Degree from the Florida Institute of Technology in 2011. I also earned a Doctor of Philosophy Degree in Public Policy and Administration from Walden University in 2017. I have participated in the service of state and federal search and seizure warrants, and have seized or assisted in seizing contraband, including firearms, ammunition, documentary evidence and contraband. I further state that I am the kind of Special Agent as delineated in 18 U.S.C. § 3051.

2. This affidavit is submitted in support of a criminal complaint charging DAKOTA J. SARFATY, MARCOS D. GUZMAN a/k/a Kaos, and LUIS D. MARCANO-AGOSTO a/k/a Blue, with violations of 18 U.S.C. §§ 922(j) (possession of stolen firearms) and 2 (aiding and abetting), GUZMAN with a violation of 18 U.S.C. § 922(g)(1) (felon in possession of firearms), and SARFATY with violations of 18 U.S.C. §§ 924(m) (theft of firearms from a Federal Firearms Licensee) and 924(c) (use of a firearm during and in relation to a drug trafficking crime). The assertions made herein are based on my personal knowledge and information I have received from this investigation, including information from various police reports relating to the arrests of SARFATY, GUZMAN and MARCANO-AGOSTO, and discussions with other law enforcement agents and officers, all of which are true and correct to the best of my knowledge and belief. Further, I have had discussions with law enforcement officers involved in this investigation who have confirmed the accuracy of the information contained within this affidavit. Since this affidavit is being submitted for a limited purpose, I have not included each and every fact that I know concerning this investigation. Rather, I have set forth only those facts that relate to the issue of whether probable cause exists to believe that SARFATY, GUZMAN and MARCANO-AGOSTO committed the above-mentioned offenses.

### BURGLARY OF CHINAPPI'S FIREARMS & SUPPLIES ON AUGUST 12, 2018

3. On August 12, 2018, at approximately 1:10 a.m., the alarm to Chinappi's Firearms & Supplies (Chinappi's), 5016 Ridge Road, Spencerport, New York, was triggered. The owner of Chinappi's is August Chinappi and he is a Federal Firearms Licensee. Officers responded to the scene and observed that the west-facing exterior wall was broken through allowing access to the basement of Chinappi's. A review of the exterior surveillance cameras

2

at Chinappi's showed that an unknown male wearing a long sleeve hooded shirt, face mask, pants, backpack and a New York Yankees hat, was on the property at approximately 12:38 a.m. It was later determined that boxes containing firearms were missing from a shelving unit in the basement of the store – located in front of the entry point. On August 15, 2018, your affiant and Industry Operations Investigator Kyle Wilkins met with August Chinappi at Chinappi's. Mr. Chinappi showed your affiant where the hole in the west wall was located and used for entry into the basement of the store.

### BURGLARY OF CHINAPPI'S FIREARMS & SUPPLIES ON AUGUST 16, 2018

4.      On August 16, 2018, at approximately 9:30 a.m., Monroe County Sheriff's Office (MCSO) Investigator Chris Lockwood contacted your affiant and explained that Chinappi's was burglarized again in the early morning hours of August 16. A review of Chinappi's interior video surveillance revealed that, at approximately 5:45 a.m. on that date, a male suspect entered Chinappi's through the same exterior hole in the basement, which had been boarded over and temporarily fixed. The suspect was dressed almost identical to the suspect in the first burglary, wearing a long sleeve hooded shirt, facemask, pants and a New York Yankees baseball cap. The suspect was observed removing numerous boxes containing firearms from the same shelving unit as the August 12, 2018 burglary, as well as other boxes containing firearms in the immediate area. The suspect was observed shoving the firearms boxes through the hole in the wall and it appeared that another person was outside receiving the firearms boxes from the suspect. While removing the firearms from Chinappi's, the mask the suspect was wearing dropped down revealing his face. Investigator Lockwood reviewed the surveillance recording and recognized the male suspect as DAKOTA J. SARFATY based on Investigator Lockwood's prior conversations and interactions with SARFATY.

3

### INTERVIEW OF WITNESS 1

5.      Later on August 16, 2018, Investigator Lockwood and MCSO Deputy Billitier interviewed a person referred to as Witness 1 (W-1). W-1, an acquaintance of SARFATY, viewed a still photograph of the male suspect inside Chinappi's and identified the suspect as DAKOTA J. SARFATY. W-1 stated, in sum and substance, that she has known SARFATY for approximately six years and that SARFATY borrowed her car on the night of August 11, 2018, at approximately 11:00 p.m. W-1 further stated that SARFATY returned the car between approximately 2:00 and 3:00 a.m. on August 12, 2018 (which was a short time after the burglary of the Chinappi's burglary on August 12, 2018, at approximately 1:10 a.m.). At some point during the interview, W-1 notified SARFATY via text message that the police were looking for him and to run.

### ARREST OF DAKOTA SARFATY

6.      Later on August 16, 2018, SARFATY called W-1 on her cell phone. W-1 answered the call and, acting at the direction of law enforcement, told SARFATY that she needed narcotics. SARFATY agreed to meet with W-1 somewhere in downtown Rochester to provide W-1 with a quantity of narcotics. After further investigation, it was determined that SARFATY agreed to meet with W-1 at 457 Sandborn Avenue in Rochester. Surveillance units from the MCSO and ATF were subsequently positioned in the area of 457 Sandborn Avenue. After W-1's car arrived at the location, SARFATY was observed leaving the residence at 457 Sandborn Avenue. SARFATY attempted to run back inside 457 Sandborn Avenue after observing police officers approaching him on foot. A police K-9 was used to apprehend SARFATY and he was taken into custody in the front yard.

7.     At the time of his arrest, police recovered a loaded Glock Model 22 .40 caliber pistol, bearing serial number MFW155, in SARFATY's waistband. It was later confirmed that pistol was one of the firearms stolen from Chinappi's. SARFATY was also wearing the same style New York Yankee baseball cap that he was wearing on the two occasions when he broke into Chinappi's. The residence was cleared and three other individuals – referred to as Witness 2 (W-2), Witness 3 (W-3) and Witness 4 (W-4) – were located inside. W-2, who advised that he was renting 457 Sandborn Avenue and lived there with his girlfriend (W-3), gave verbal consent for officers to search the residence. During a search of the kitchen area, officers recovered a black bag containing two firearms – a Masterpiece Arms, 9mm handgun, bearing serial number F10282, and a Harrington & Richardson (H&R), .32S&W caliber revolver, bearing serial number 478164 – and what appeared to be men's toiletry items on top of the kitchen counter. It was later confirmed that these two firearms were also stolen from Chinappi's.

## INTERVIEW OF W-2

8.     In a signed written statement, W-2 stated, in sum and substance, the following. On August 16, 2018, SARFATY called W-3 and asked if he (SARFATY) and W-4 (SARFATY's girlfriend) could come hang out at their residence (457 Sandborn Avenue). W-2 stated that SARFATY and W-4 arrived at the residence around 7:00 p.m. on August 16, 2018, and they did not know SARFATY had any firearms. W-2 further stated that the black bag found in the kitchen area did not belong to him or W-3.

## INTERVIEW OF W-4

9.      While at 457 Sandborn Avenue, W-4 (SARFATY's girlfriend) advised Investigator Lockwood that she would consent to have her apartment – which is located at Dewey Avenue and Winchester Street in Rochester, New York – searched. During a search of W-4's apartment, officers recovered four empty firearms boxes that were confirmed to be stolen from Chinappi's. W-4 was then transported to the MCSO Zone C building to be interviewed. W-4 stated, in sum and substance, the following. W-4 was recently released from Helio Health Rehab on August 15, 2018. W-4's father dropped her off at her apartment located on the corner of Dewey Avenue and Winchester Street. When W-4 walked into her apartment, SARFATY was there. Later that night (August 15, 2018), two other individuals – Witness 5 (W-5) and Witness 6 (W-6) – arrived at W-4's apartment to hang out. Eventually, SARFATY, W-4, W-5, and W-6 went to a location on Avenue B (later identified to be 152 Avenue B, Rochester, New York). W-5 and W-6 did not stay long, and W-4 eventually fell asleep on the couch. A few hours later, SARFATY and two other individuals – who she knew as "Kaos" (GUZMAN)[1] and "Blue" (LUIS D. MARCANO-AGOSTO)[2] – came into the apartment loudly, which woke her up. W-4 stated she thought that SARFATY, GUZMAN and MARCANO-AGOSTO came to the apartment at around 5:00 a.m. (August 16, 2018) SARFATY, GUZMAN, and MARCANO-AGOSTO were looking at handguns in the kitchen. W-4 estimated that she observed five handguns.

---

[1] W-4 identified "Kaos" in a photographic array as MARCOS D. GUZMAN.
[2] W-4 viewed a photographic array containing a photograph of LUIS D. MARCANO-AGOSTO in position number two. W-4 stated that she believed that the individual in position number two was the individual she knows as "Blue."

### INTERVIEW OF DAKOTA J. SARFATY

10.     After his arrest, SARFATY was initially transported to the hospital after being bitten by the police K-9, and was eventually transported back to the MCSO Zone C office upon release from the hospital to be interviewed. At approximately 5:31 a.m., MCSO Investigator Lockwood placed SARFATY in an interview room. Investigator Lockwood advised SARFATY of his <u>Miranda</u> rights. SARFATY stated he understood his <u>Miranda</u> rights and agreed to speak with Investigator Lockwood. During the ensuing interview,[3] SARFATY admitted stealing firearms from Chinappi's and further stated that he had dropped off a duffle bag containing a quantity of firearms stolen from Chinappi's at 152 Avenue B, Rochester, New York, and that the bag would be located behind a couch inside that location. This address was discovered to be a residence associated with GUZMAN. SARFATY further stated that he sold approximately fifteen (15) firearms he stole from Chinappi's to an unknown individual at 107 Avenue A, Rochester, New York. In addition, SARFATY stated that he traded a 9mm firearm for a quantity of cocaine to an individual with the initials S.W. at 1560 East Main Street, Rochester, New York.

### CONFIRMATION OF GUZMAN'S KNOWN ADDRESSES

11.     After the interview of SARFATY, W-1 was asked if she knew anyone by the name of "Kaos" (GUZMAN). W-1 stated she knew "Kaos" but not his real name, and that he stayed somewhere off the intersection of Harris Street and Avenue B the downtown Rochester, New York area. W-1 mentioned she did not know the exact addresses, but would show your affiant the exact houses where she had dropped GUZMAN off on prior occasions.

---

[3] The interview was video recorded.

Your affiant, ATF Supervisor James Burroughs and W-1 drove to the area of Avenue B and Harris Street, and W-1 pointed out the residence at 152 Avenue B. W-1 stated that GUZMAN'S girlfriend resided there. W-1 also pointed out a residence located right around the corner from 152 Avenue B on Harris Street, with the address of 78 Harris Street and advised that GUZMAN was associated with that address as well.

### INTERVIEWS OF W-5 AND W-6

12.     Investigator Lockwood also interviewed Witness 5 (W-5) and Witness 6 (W-6), who were both identified by other witnesses to be associates of SARFATY. In a written deposition, W-5 stated, in sum and substance, the following. On August 15, 2018, SARFATY, W-4, W-5, and W-6 met SARFATY'S aunt on Dewey Avenue so SARFATY could get $40 for drugs. After getting the money, they drove to the area of Avenue B and Harris Street. During the drive, SARFATY asked W-5 to borrow his vehicle because he was going to "Auggies" (which was a reference to Chinappi's, which is owned and operated by August Chinappi) to steal guns. W-5 told SARFATY that he was not going to let him borrow his vehicle, and upon arrival at Avenue B and Harris Street, SARFATY and W-4 exited the vehicle. After dropping off SARFATY and W-4, W-5 and W-6 went to W-6's apartment and stayed there for the rest of the night. W-5 stated that the next day (August 16, 2018), SARFATY called W-6 and asked to be picked up at the intersection of Avenue B and Harris Street. At approximately 1:00 p.m., W-5 and W-6 picked up SARFATY and W-4 at the intersection of Avenue B and Harris Street. SARFATY had a small bag and mentioned that he had guns. SARFATY and W-4 were driven to W-4's apartment on Dewey Avenue near Winchester Street. SARFATY went inside to grab clothes and eventually got back into W-5's vehicle, and they all went to Vinal Avenue where they spent the rest of the day. (It should be

8

noted that Sandborn Avenue is off of Vinal Avenue, and previous interviews indicated they all ended up at 457 Sandborn Avenue).

13.     In a written deposition, W-6 stated the following in sum and substance. SARFATY told W-6 that he was going to do a "lick" (which I know is a street slang for a robbery or burglary) at the gun shop and W-6 could go with him, or get out of the car. W-6 stated he got out of the car. W-6 called a friend to pick him up, and he did not think SARFATY would do the "lick." On August 12, 2018, W-6 went to W-4's apartment with "Kaos" (who W-6 identified in a photographic array as MARCOS D. GUZMAN) and W-1 at the corner of Dewey Avenue and Winchester Street. W-6 stated that while in SARFATY'S apartment, he observed approximately twenty (20) handguns laid out on SARFATY's bed. W-6 stated that SARFATY said he did the "lick" and got the firearms from Chinappi's gun shop. W-6 further stated that SARFATY told him he broke through the wall on the side of Chinappi's with a crowbar. While at W-4's apartment, W-6 saw two (2) different individuals show up, stay a short amount of time, look at the handguns and leave. W-6 stated that "Kaos" (GUZMAN) got upset with SARFATY for allowing people to enter the apartment, and was afraid they would come back and rob them, so "Kaos" (GUZMAN) packed numerous duffle bags full of the handguns and took them down to W-1's vehicle. W-1 then drove "Kaos" (GUZMAN) and W-6 to 152 Avenue B, and all of the firearms were taken inside. W-6 and W-1 then returned to SARFATY'S apartment where SARFATY came downstairs carrying a black bag and got into W-1's vehicle. W-6 asked SARFATY what was in the black bag, and SARFATY told W-6 he has the rest of the guns from upstairs. SARFATY told W-1 to drive back to "Kaos's" (GUZMAN'S) house, but they could not find "Kaos" (GUZMAN). W-6 asked W-1 to drop him off at the zoo because he did not want to be in the vehicle with

9

SARFATY or the firearms. W-6 stated that he was dropped off at the zoo, and W-1 and SARFATY left. W-6 mentioned that on August 17, 2018,[4] W-5, W-4, W-6 and SARFATY were back at W-4's apartment, when SARFATY spoke to his aunt asking for $40. SARFATY'S aunt agreed to meet him to drop off the money he was asking for. After SARFATY met his aunt, SARFATY was trying to get W-5 to drive him back to Chinappi's so he could steal more firearms. According to W-6, W-5 told SARFATY he would not drive him back to Chinappi's. SARFATY received a phone call from "Kaos" (GUZMAN) in which he (GUZMAN) indicated he had a car and to have W-5 drop SARFATY off on Harris Street. W-5 dropped SARFATY and W-4 off on Harris Street, and W-5 and W-6 went back to W-6's apartment. Later that morning (August 16, 2018), W-6 called SARFATY and asked if he was in trouble. SARFATY replied no, but mentioned that he robbed Chinappi's again. W-6 stated that around noon (August 16, 2018), SARFATY called him and asked if W-5 could bring him to Irondequoit. W-5 and W-6 picked up SARFATY and W-4 on Harris Street and drove to a house off of Vinal Street (Vinal Avenue is in the immediate vicinity of 457 Sandborn Avenue).

## EXECUTION OF SEARCH WARRANT

14.     On August 17, 2018, multiple state search warrants were obtained and executed at various locations, including 152 Avenue B. During the execution of the search warrant at 152 Avenue B, MARCOS D. GUZMAN a/k/a Kaos, was found in the living room of the residence. Meanwhile, LUIS D. MARCANO-AGOSTO a/k/a Blue, was observed fleeing the front porch of 152 Avenue B and running north between the yards. He was apprehended

---

[4] Based on other interviews in this case, I believe the reference to August 17, 2018 in W-6's written statement is a typographical error and that the date referenced by W-6 was actually August 16, 2018.

after a short foot chase in the driveway of 146 Avenue B, walking toward the street. Once the residence was secured, it was searched. No firearms were located inside the residence, but officers found a black duffle bag in close proximity to the fence that separates the backyards of the properties at 152 Avenue B and 146 Avenue B (which was in the path of MARCANO-AGOSTO's flight). The black duffle bag contained the following firearms: a Mag Research Model Desert Eagle .357 caliber pistol, bearing serial number 31202222; Intratec Model AB10 9mm caliber pistol, bearing serial number A006613; a Thompson Center Arms Model Encore .308 Win caliber pistol, bearing serial number 162466; an Ithaca Model X-Caliber .44 Mag caliber pistol, bearing serial number 200000611; a Grendal Model P12 .380 caliber pistol with a defaced serial number; and an Ithaca Model X-Caliber .44 Mag caliber pistol, bearing serial number 200000649. In addition, officers found a Springfield Armory Model XD .40 caliber pistol, bearing serial number US217004, and a Clerke Technicorp .32 S&W caliber revolver, bearing serial number 784729, inside a grill on the property at 152 Avenue B. It was subsequently determined that all of the firearms in the duffle bag and grill were stolen from Chinappi's.

15.     All of the above-described firearms meet the definition of a "firearm" under 18 U.S.C. § 921(a)(3) because they are capable of expelling a projectile by the force of an explosion. The above-described firearms – with the exception of the two (2) Ithica Model X-Caliber pistols – were not manufactured in the State of New York and therefore would have traveled in interstate commerce prior to the possession of those firearms by SARFATY, GUZMAN and MARCANO-AGOSTO.

16.     I have reviewed a criminal history for GUZMAN and determined that he has a prior conviction for Robbery 3° from Steuben County Court, New York, from May 25, 2016. Robbery 3° is a crime punishable by more than one year imprisonment and, therefore, is a felony.

## CONCLUSION

17.     Based upon the above information, your affiant submits there is probable cause to believe that: between on or about August 12, 2018, and August 17, 2018, in the Western District of New York, DAKOTA J. SARFATY, MARCOS D. GUZMAN a/k/a Kaos, and LUIS D. MARCANO-AGOSTO a/k/a Blue, committed a violation of 18 U.S.C. §§ 922(j) (possession of stolen firearms) and 2 (aiding and abetting); on or about August 12, 2018, in the Western District of New York, SARFATY committed a violation of 18 U.S.C. §§ 922(u) and 924(m) (theft of firearms from a Federal Firearm Licensee); on or about August 16, 2018, in the Western District of New York,  SARFATY committed a violation of 18 U.S.C. §§ 922(u) and 924(m) (theft of firearms from a Federal Firearm Licensee); between on or about August 12, 2018, and August 17, 2018, in the Western District of New York, GUZMAN committed a violation of 18 U.S.C. § 922(g)(1) (possession of firearms by a convicted felon); and between on or about August 12, 2018, and on or about August 17, 2018, in the Western District of New York, SARFATY committed a violation of 18 U.S.C. § 924(c) (use of a firearm during and in relation to a drug trafficking crime.

JAMES E. BURROUGHS
SUPERVISORY SPECIAL AGENT
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to and subscribed to
before me this 5th day of September, 2018.

HONORABLE JONATHAN W. FELDMAN
United States Magistrate Judge
Western District of New York

13